UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

---

| | |
|---|---|
| **TROY A. MAILLET** | **CIVIL ACTION NO. 16-0513**<br>**c/w CIVIL ACTION NO. 17-0704** |
| **VERSUS** | **JUDGE ELIZABETH FOOTE** |
| **GULF CRANE SERVS., INC., ET AL.** | **MAGISTRATE JUDGE HANNA** |

---

## MEMORANDUM RULING

The Court has consolidated two actions brought by separate plaintiffs, Troy Maillet

("Maillet") and Chad Billiot ("Billiot") (collectively "Plaintiffs"), arising from an accident

involving a personnel transfer off of an offshore platform. [Record Documents 33–34]. Before

the Court is a motion for summary judgment filed by Gulf Crane Services, Inc. ("Gulf Crane")

on Plaintiffs' claims for exemplary damages. [Record Document 56]. For the reasons discussed

below, the motion is **GRANTED IN PART** and **DENIED IN PART**. The motion is

**DENIED** as to Plaintiffs' allegations that Gulf Crane improperly trained its crane operator and

that Gulf Crane's Health, Safety, and Environment Manager did not adequately update Gulf

Crane's policies in light of a prior accident. The motion is **GRANTED** in all other respects.

I.     **Background**

 A.     **Factual Background**

The accident giving rise to this suit occurred on a production platform in the Gulf of

Mexico off the coast of High Island, Texas. [Record Documents 56-2 at 1, 6 and 65-21].

1

Freeport-McMoRan Oil & Gas LLC ("Freeport") owned the platform and contracted with other companies for particular services: with Gulf Crane for crane operators and assistance in developing Freeport's Crane Operations and Maintenance Program Manual (the "Freeport Manual"); with C & D Production Specialists Co., Inc. ("C & D") for the services of Tony Morrison ("Morrison") to serve as Freeport's "company man" on the platform; with Total Safety Services ("Total Safety") for the assistance of Maillet as a safety technician; and with Superior Energy Services ("Superior"), Billiot's employer, for plugging the well associated with the platform. [Record Documents 56-2 at 1–3, 58-4 at 3, 64 at 1, and 65-21].

On the date of the accident, weather conditions on the platform began to deteriorate, and a decision was made to transfer personnel off the platform and onto a crew boat by using a personnel basket attached to a crane. [Record Documents 56-2 at 4 and 65-21]. The crane operator was Warren Bateman ("Bateman"), a Gulf Crane employee. [Record Documents 56-2 at 2 and 65-21]. Just before the transfer, the wind was steady at twenty-five miles per hour with one thirty-mile-per-hour gust; the Freeport Manual set thirty knots (approximately thirty-five miles per hour) as the maximum speed at which to operate the platform's crane. [Record Documents 56-2 at 3–4, 56-5 at 62, and 65-21]. Maillet and Bateman believed the transfer could be made safely, and Morrison approved it. [Record Documents 56-2 at 5 and 65-21].

Billiot, Maillet, Corey Mata ("Mata"), and one other worker boarded the personnel basket. [Record Document 56-2 at 5 and 65-21]. As Bateman swung the basket toward the waiting crew boat, he lost control of the crane. [Record Documents 56-2 at 5–6 and 65-21]. The

basket carrying the workers slammed into the crane boom rest, throwing Maillet around inside the basket and ejecting Billiot from it; both were allegedly injured. [Record Documents 56-2 at 6, 65-1 at 7–8, 65-2 at 25–26, and 65-21].[1] Maillet and Billiot seek compensatory and exemplary damages. [Record Document 13 at 3–7]; [Record Document 1 at 3–7 in No. 6:17-cv-0704].

B.      **Procedural Posture**

Plaintiffs bring their actions under the Outer Continental Shelf Lands Act ("OCSLA"). 43 U.S.C. § 1333(a) (2012). After the Court consolidated the actions, [Record Document 34], it granted Gulf Crane's motion to designate Morrison, Total Safety, Eagle Consulting, LLC ("Eagle") and two Eagle employees as responsible third parties under Section 33.004 of the Texas Civil Practice and Remedies Code. [Record Documents 31 and 55]. Gulf Crane then filed for summary judgment. [Record Document 56]. Because Plaintiffs have filed an opposition to which Gulf Crane has replied, Gulf Crane's motion is ripe for adjudication. [Record Documents 65 and 68].

II.     **Law and Analysis**

A.      **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

---

[1] Mata was also ejected from the basket and suffered a broken back and traumatic brain injury. [Record Document 65 at 9]. He brought a separate suit, which has settled. [*Id.*]; *see Mata ex rel. Mata v. Freeport McMoran Inc.*, No. 3:15-CV-00155, 2016 WL 6037237 (S.D. Tex. Oct. 14, 2016).

to judgment as a matter of law."[2] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23. However, "if the movant bears the burden of proof on an issue, . . . he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

_____

[2] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous" that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. Pursuant to Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

### B.    Texas Law on Exemplary Damages

In OCLSA cases, a federal court applies the substantive law of the state adjacent to the continental shelf. 43 U.S.C. § 1333(a)(2)(A). Because the platform was located off the Texas coast, [Record Documents 56-2 at 1 and 65-21], this Court must apply Texas law, which provides for exemplary damages only when a plaintiff proves by clear and convincing evidence that her compensatory damages resulted from fraud, malice, or gross negligence, Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a)–(b) (West 2014). Under Texas law, gross negligence has objective and subjective elements. *Id.* § 41.001(11); *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001) (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994)). First, a

defendant's conduct must involve an "objectively . . . extreme degree of risk," Civ. Prac. & Rem. § 41.001(11)(A), such that a reasonable observer would anticipate an "extraordinary harm such as 'death, grievous physical injury, or financial ruin,'" *Kinder Morgan N. Tex. Pipeline, L.P. v. Justiss*, 202 S.W.3d 427, 447 (Tex. App. 2006) (quoting *Celanese Ltd. v. Chem. Waste Mgmt., Inc.*, 75 S.W.3d 593, 600 (Tex. App. 2002)). Second, the defendant must have "actual, subjective awareness" of the extreme risk, but nevertheless choose to act with "conscious indifference" to others' welfare. Civ. Prac. & Rem. § 41.001(11)(B). Thus, a plaintiff must prove that the "defendant knew about the peril, but its acts or omissions demonstrated that it did not care." *Lee Lewis Const.*, 70 S.W.3d at 785 (citing *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998)).

For a corporation to be liable for exemplary damages, the corporation itself must be grossly negligent. *Ellender*, 968 S.W.2d at 921 (citing *Fort Worth Elevators Co. v. Russell*, 70 S.W.2d 397, 406 (Tex. 1934), *disapproved on other grounds by Wright v. Gifford-Hill & Co.*, 725 S.W.2d 712 (Tex. 1987)). As a result, liability for exemplary damages is not founded on a theory of respondeat superior. *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997) (citing *Fort Worth Elevators*, 70 S.W.2d at 406). Instead, the plaintiff must prove the corporation's gross negligence by showing that: (1) the corporation authorized or ratified an agent's gross negligence; (2) the corporation was grossly negligent in hiring the agent; or (3) the agent who acted with gross negligence was a vice-principal. *Ellender*, 968 S.W.2d at 921–22.

C.    **Application of Texas Law on Exemplary Damages**

1.    **Bateman's Gross Negligence**

Plaintiffs argue that Bateman's decisions to swing the crane with the wind, to operate the

crane at less than full power, and to lower the basket while the crane was still rotating were grossly negligent. [Record Document 65 at 15–20]. While agreeing that Bateman operated the crane in this manner, Gulf Crane disputes Plaintiffs' conclusions and notes that C & D's investigator found that the accident's cause was mechanical failure resulting from wind speeds exceeding those that the crane was designed to withstand rather than operator error. [Record Documents 56-1 at 8, 56-9 at 8–9, 11, and 68 at 7–8]. Given these starkly different conclusions drawn from a common set of facts, the Court cannot determine as a matter of law that Bateman was not grossly negligent.

### 2.    Gulf Crane's Gross Negligence

In order for Gulf Crane to be liable for exemplary damages, the company itself must have been grossly negligent either by authorizing or ratifying Bateman's conduct during the personnel lift, by acting with gross negligence in hiring Bateman, or by committing an act of gross negligence through a vice-principal. *See Ellender*, 968 S.W.2d at 921–22.

### a.    Authorizing or Ratifying Bateman's Decision

Ratification means that the "employer or its vice-principal confirm[ed], adopt[ed], or fail[ed] to repudiate" an employee's grossly negligent conduct. *Prunty v. Ark. Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir. 1994) (citing *Hinote v. Oil, Chem. and Atomic Workers Int'l Union, Local 4-23*, 777 S.W.2d 134, 141 (Tex. App. 1989); *K-Mart No. 4195 v. Judge*, 515 S.W.2d 148, 153–154 (Tex. Civ. App. 1974)). Thus, ratification requires actual knowledge of the employee's past conduct. *Id.* (citing *Hinote*, 777 S.W.2d at 141). Although Plaintiffs have produced evidence of Gulf Crane's conduct prior to the accident, [Record Document 65 at 22], they have pointed to no

record evidence of culpable behavior following the accident that would suggest that Gulf Crane or its vice-principals adopted or confirmed Bateman's conduct.

Gulf Crane did not expressly authorize this particular lift as the uncontroverted facts show that Bateman did not contact anyone from Gulf Crane prior to performing the personnel transfer. [Record Document 56-2 at 8 and 65-21]. However, a corporation may impliedly authorize conduct by means of a corporate policy when corporate policymakers know that adopting a particular policy will create an extreme degree of risk. *Qwest Int'l Commc'ns, Inc. v. AT&T Corp.*, 167 S.W.3d 324, 326–27 (Tex. 2005) (citing Civ. Prac. & Rem. § 41.001(11)). Although the parties dispute the appropriateness of the Freeport Manual's rule that lifts may be performed in wind speeds of up to thirty knots, [Record Documents 65 at 21–24 and 68 at 4–5], this policy was Freeport's, not Gulf Crane's, [Record Documents 56-2 at 3, 65-21, and 68-4 at 31]. Gulf Crane participated in the development of this policy—though the parties strongly disagree on the extent of this participation—but corporate responsibility for adopting a safe policy belonged to Freeport. [Record Documents 65 at 21–24 and 68 at 3–7]. Gulf Crane's policy not only did not require Bateman to perform all lifts authorized by the Freeport Manual, it also empowered him to refuse to perform crane operations he believed to be unsafe. [Record Documents 56-6 at 6, 65 at 12, 65-8 at 21–22, and 65-9 at 23, 25]. Therefore, Gulf Crane cannot be held liable for authorizing or ratifying the personnel lift.

### b.    Grossly Negligent Hiring of Bateman

Grossly negligent hiring requires actual knowledge at the time of hiring that the prospective employee is unfit for the position. *See Ellender*, 968 S.W.2d at 921; *THI of Tex. at*

*Lubbock I, LLC v. Perea*, 329 S.W.3d 548, 582–83 (Tex. App. 2010). Bateman testified that he had

prior experience working on farm equipment. [Record Document 56-5 at 5]. Although he been

convicted of drug possession and criminal trespass, both convictions occurred years before he

was hired by Gulf Crane. [*Id.* at 4–5]. Thus, it cannot be said that Bateman was so unfit for his

position that Gulf Crane's hiring decision was grossly negligent. *Cf. THI of Tex. at Lubbock*, 329

S.W.3d at 582–83 (upholding a jury finding of a hospital's gross negligence when the hiring

manager knew that the hired applicant had had his nursing license suspended in another state).

   c.  **Grossly Negligent Acts of a Gulf Crane Vice-Principal**

Gulf Crane argues that Plaintiffs cannot demonstrate the gross negligence of any Gulf

Crane vice-principal and that Bateman was not a vice-principal. [Record Document 56-1 at 18].

In response, Plaintiffs implicitly concede Bateman's status. [Record Document 65 at 27].

However, they argue that Brandon Bollinger, Gulf Crane's president, helped craft the Freeport

Manual's wind-speed policy, that Walter LeCavalier ("LeCavalier"), Gulf Crane's Health, Safety,

and Environment Manager, failed to adjust Gulf Crane's policies following an earlier accident,

and that unidentified vice-principals failed to properly train Bateman. [*Id.* at 26–28]. Vice-

principals are:

> (a) Corporate officers; (b) those who have authority to employ, direct, and
> discharge servants of the master; (c) those engaged in the performance of
> nondelegable or absolute duties of the master; and (d) those to whom a master
> has confided the management of the whole or a department or division of his
> business.

*Hammerly Oaks*, 958 S.W.2d at 391 (quoting *Fort Worth Elevators*, 70 S.W.2d at 406). A corporate

officer is one engaged in "representing [the company] in its corporate capacity." *Fort Worth*

*Elevators*, 70 S.W.2d at 407 (citing *Chronister Lumber Co. v. Williams*, 288 S.W. 402, 404 (Tex. Comm'n App. 1926)). Nondelegable corporate duties include setting appropriate safety policies, providing employees with safe equipment with which to work, ensuring that the workplace is reasonably safe, and exercising ordinary prudence when making hiring decisions. *Id.* at 401–02.

Bateman is a crane tech with no supervisory, managerial, or policymaking duties. [Record Documents 56-5 at 5 and 56-6 at 99–100]. Therefore, he is not a vice-principal, and his alleged gross negligence cannot be imputed to Gulf Crane. Although Gulf Crane has a nondelegable duty to adopt safety regulations, Gulf Crane's policy allowed Bateman to refuse to perform lifts authorized by the Freeport Manual. [Record Documents 56-6 at 6, 65 at 12, 65-8 at 21–22, and 65-9 at 23, 25]. Hence, even if the Court were to assume that the Freeport Manual's wind-speed policy was grossly negligent and that Gulf Crane can be held responsible for the policy, there would still be no factual dispute regarding Gulf Crane's gross negligence in this regard because Gulf Crane did not require Bateman to adhere to that policy.

Plaintiffs also argue that LeCavalier was grossly negligent in failing to modify Gulf Crane's policies after an earlier accident involving a personnel basket. [Record Documents 65 at 27 and 68-5 at 4]. Two years before Maillet and Billiot's accident, a Gulf Crane employee, James Davis ("Davis"), was injured when a crane operator crashed a personnel basket in which Davis was riding. [Record Document 65-19 at 4–7]. LeCavalier's investigation concluded that high winds caused the accident and that the crane should not be used if wind speeds exceed thirty-five miles per hour. [Record Document 68-5 at 33–34]. His accident report also identified swinging crane loads against the wind as a corrective action. [*Id.* at 34–35, 38–39].

LeCavalier testified that Bateman complied with all of the report's recommendations. [*Id.* at 43]. If those recommendations were sufficient to discharge Gulf Crane's absolute duty to adopt appropriate safety regulations in light of new information revealed by the Davis incident, then Gulf Crane would not be liable for exemplary damages. Conversely, if the recommendations were insufficient or were ineffectively implemented, Gulf Crane may be liable for breaching its nondelegable safety duty. Because the parties dispute the relevance of the Davis incident as well as the correctness of LeCavalier's recommendations and whether they were properly implemented, [Record Documents 65 at 25–27 and 68 at 7–9], summary judgment is inappropriate.

Even if the record conclusively established that LeCavalier was grossly negligent, for his gross negligence to be imputed to Gulf Crane, he must be a vice-principal. Although he is Gulf Crane's Health, Safety, and Environment Manager, [Record Document 68-5 at 4], Plaintiffs have offered no evidence that he has supervisory duties, is a corporate officer, or is empowered to make hiring and firing decisions, *see Hammerly Oaks*, 958 S.W.2d at 391 (citing *Fort Worth Elevators*, 70 S.W.2d at 406). However, some evidence suggests that he develops safety policies. [Record Document 68-5 at 4]. If that is true, then LeCavalier would be discharging a nondelegable duty and would thus be a vice-principal of Gulf Crane. *See Fort Worth Elevators*, 70 S.W.2d at 407. A factual dispute thus exists regarding LeCavalier's vice-principal status.

Finally, Plaintiffs argue that Gulf Crane failed to properly train Bateman. [Record Document 65 at 27–28]. Although Plaintiffs do not identify a specific vice-principal responsible for training, [*id.*], given the risks posed by unsafe operation of a crane engaged in a personnel

transfer, an employee responsible for training Gulf Crane's operators would be fulfilling one of the corporation's nondelegable duties and would thus be a vice-principal. The parties agree that Bateman was an experienced and certified crane operator and that he had operated this type of crane many times before. [Record Documents 56-2 at 7 and 65-21]. However, they dispute whether he was trained to use this crane under the conditions prevailing at the time of the accident. Gulf Crane's expert concluded that operator error did not cause the accident. [Record Document 56-9 at 11]. If this conclusion is correct, then Gulf Crane's training regimen is simply irrelevant. Plaintiffs' expert, in contrast, has concluded that Bateman was "uninformed, untrained, unaware, and unfamiliar with how this [c]rane should have been safely operated under these circumstances." [Record Document 65-14 at 102]. Because Gulf Crane is potentially liable for exemplary damages if its training of Bateman was grossly negligent, a jury must resolve these competing views of Bateman's training.

Therefore, the Court finds that Plaintiffs have failed to carry their burden of production as to Gulf Crane's liability for exemplary damages arising from Bateman's alleged gross negligence and the wind speed limit set in the Freeport Manual, but have raised genuine factual disputes regarding the presence or absence of effective and appropriate policy changes after Davis's accident, LeCavalier's role as a vice-principal, and Gulf Crane's training of Bateman.

III.    Conclusion

In light of the foregoing, Gulf Crane's motion for partial summary judgment on exemplary damages [Record Document 56] is **GRANTED IN PART** and **DENIED IN PART**. It is **DENIED** as to Plaintiffs' allegations that Bateman was improperly trained and that

LeCavalier did not appropriately modify Gulf Crane's policies following the Davis incident. It

is **GRANTED** as to all other claims for exemplary damages.

    **THUS DONE AND SIGNED** in Shreveport, Louisiana, this 9 14 day of

_April_, 2018.

                                   _____

                                   ELIZABETH ERNY FOOTE
                                   UNITED STATES DISTRICT JUDGE